Case Number: PC-2022-00335
Filed in Providence/Bristol County Superior Court
Submitted: 1/18/2023 9:15 AM
Envelope: 3945578
Reviewer: Maureen D.

## STATE OF RHODE ISLAND

PROVIDENCE COUNTY                                    SUPERIOR COURT

DALE BOND

            *v.*                          C.A. No.: PC22-00335

LIFESPAN CORPORATION,
THE MIRIAM HOSPITAL,
BROWN UNIVERISTY, and
RENA WING

## SECOND AMENDED COMPLAINT

1.      This is a claim for equitable and declaratory relief and for damages for violation of
the Rhode Island Fair Employment Practices Act, R.I.G.L. §28-5-1, et seq., the Rhode
Island Civil Rights Act, R.I.G.L. §42-112-1 et seq., and 28 U.S.C. §2000(e) and §2000(e)-
3, also known as Title VII of the Civil Rights Act of 1964.

2.      The plaintiff filed a charge with the Rhode Island Commission for Human Rights,
20-EAG-109, and thereby the Equal Employment Opportunity Commission, 16J-2022-
00086, and has received a Right to Sue from each Commission and has thereby satisfied
any and all administrative prerequisites to suit.

3.      Plaintiff Dale Bond is a resident of the State of Rhode Island and Providence County
therein.

4.      Defendant Lifespan Corporation ("Lifespan") is a Rhode Island corporation
operating within the State of Rhode Island, with a business location within the State of
Rhode Island and with sufficient minimum contacts with the State of Rhode Island for this
Court to exercise jurisdiction over Lifespan.

5.      Defendant The Miriam Hospital ("Miriam") is a Rhode Island corporation operating
within the State of Rhode Island, with a business location within the State of Rhode Island

Case Number: PC-2022-00335
Filed in Providence/Bristol County Superior Court
Submitted: 1/18/2023 9:15 AM
Envelope: 3945578
Reviewer: Maureen D.

23-cv-00081-JJM-LDA    Document 1-1    Filed 02/24/23    Page 2 of 22 PageID #: 7

and with sufficient minimum contacts with the State of Rhode Island for this Court to exercise jurisdiction over Miriam.

6.      Defendant Brown University ("Brown") is a domestic non-profit corporation and institution of higher learning within the State of Rhode Island and Providence County therein.

7.      Defendant Rena Wing is an individual who was, at all times pertinent to this complaint, an employee of the corporate defendants and Plaintiff's supervisor of the Plaintiff.

<u>Statement of Facts</u>

8.      The Plaintiff is male and over 40 years of age.

9.      The Defendants are employers as defined by R.I.G.L. §28-5-6 and 42 U.S.C. §2000(e).

10.      The Defendants exercised sufficient control over Defendant Wing and Plaintiff Bond's terms and conditions of employment and were joint employers of the Plaintiff and Defendant Wing.

11.      The Defendants had knowledge, and were aware, of the Plaintiff's gender and age.

12.      The Plaintiff performed duties of his employment with Defendants within the State of Rhode Island.

13.      At all times relevant to the complaint, Plaintiff was a Professor (Research) of Psychiatry and Human Behavior at The Miriam Hospital and Brown Warren Alpert Medical School.

Case Number: PC-2022-00335
Filed in Providence/Bristol County Superior Court
Submitted: 1/18/2023 9:15 AM
Envelope: 3945578
Reviewer: Maureen D.

23-cv-00081-JJM-LDA    Document 1-1    Filed 02/24/23    Page 3 of 22 PageID #: 8

14.    Plaintiff was employed as a Professor (Research) of Psychiatry and Human Behavior at The Miriam Hospital and Brown Warren Alpert Medical School, sat on the editorial boards for multiple obesity-related journals, was invited to be a de facto member of Brown's Academic Faculty Appointments & Promotions Committee, and was a research mentor within the Postdoctoral Training in the Cardiovascular Behavioral Medicine Program at The Miriam Hospital and Brown University.

15.     Defendant Wing is Professor of Psychiatry and Human Behavior at the Warren Alpert Medical School at Brown University and Director of the Weight Control & Diabetes Research Center at The Miriam Hospital.

16.    Defendants Brown University, Lifespan Corporation and The Miriam Hospital engage in a joint venture involving the hire, promotion, retention and termination of research faculty.

17.    Research faculty, including Plaintiff, are appointed and promoted by Brown University and their salary is paid by Lifespan Corporation and The Miriam Hospital.

18.    Brown's Faculty Handbook pertains to the Division of Biology and Medicine, of which Plaintiff was a part.

19.    Plaintiff, at all times pertinent to this complaint, was a research professor with Brown University and was so identified by Brown University on its website.

20.    Plaintiff's duties, promotion and pay scale are all set by Brown University.

21.    Brown University reviewed, processed and determined Plaintiff's promotion from Assistant Professor to Associate Professor to Full Professor, which typically entails an increase in pay.

Case Number: PC-2022-00335
Filed in Providence/Bristol County Superior Court
Submitted: 1/18/2023 9:15 AM
Envelope: 3945578
Reviewer: Maureen D.

1:23-cv-00081-JJM-LDA   Document 1-1   Filed 02/24/23   Page 4 of 22 PageID #: 9

22.    If a Brown University research faculty is not promoted through the rank of professors, their employment is terminated with both Brown University as well as Lifespan Corporation and The Miriam Hospital.

23.    Brown University appointed Plaintiff as a full professor that determined Plaintiff's rate of pay to be paid by Lifespan and The Miriam Hospital in or about 2019.

24.    In or about May 2019, the chair of the Department of Psychiatry and Human Behavior at Brown Medical School, Dr. Steven Rasmussen, called Plaintiff to notify and congratulate him that Plaintiff's promotion to rank of full professor had been unanimously approved and that Plaintiff's new appointment would be effective from July 1, 2019 through June 30, 2024.

25.    Plaintiff, as a member of the faculty at Brown University, was subject to the Brown University Code of Conduct, which addresses conduct and disciplinary action, up to and including suspension without pay, or termination of employment or association with the University.

26.    If Plaintiff's employment or association with Brown University was terminated, his employment with Lifespan Corporation and The Miriam Hospital would have been terminated.

27.    Brown University had the ability to promote, demote, terminate and discipline the Plaintiff and any such termination by Brown University of Plaintiff's position as a research professor would terminate Plaintiff's employment with Lifespan Corporation and The Miriam Hospital.

28.    Plaintiff's position as a Full Professor requires Plaintiff's maintenance of his relationship with Lifespan Corporation and The Miriam Hospital.

29.    Plaintiff's salary was paid by Lifespan and the Miriam Hospital.

Case Number: PC-2022-00335
Filed in Providence/Bristol County Superior Court
Submitted: 1/18/2023 9:15 AM
Envelope: 3945578
Reviewer: Maureen D.

1:23-CV-00081-JJM-LDA   Document 1-1   Filed 02/24/23   Page 5 of 22 PageID #: 10

30.     On its website, Lifespan describes itself as a "not-for-profit comprehensive, integrated, academic health system with The Warren Alpert Medical School of Brown University."

31.     Plaintiff, as a research professor, published research papers with credit to, and affiliation with, Brown University, Lifespan and The Miriam Hospital.

32.     Rena Wing, at all times pertinent to this complaint, like Plaintiff, was and is a research professor with Brown University and was so identified by Brown University on its website. She  continues to be so identified by Brown as of the date of the filing of this Amended Complaint.

33.     Rena Wing is a Professor of Psychiatry and Human Behavior at the Warren Alpert Medical School at Brown University and Director of the Weight Control and Diabetes Research Center at the Miriam Hospital.

34.     Dr. Wing's Linked In profile, as of the date of filing the original and this Amended Complaint, identifies her employment as "Professor of Psychiatry at The Miriam Hospital, Brown MNedical School"  (sic).

35.     At all times relevant to the matters set forth in the complaint, on Miriam's website, Dr. Wing was identified as a Professor of Psychiatry and Human Behavior at the Warren Alpert Medical School at Brown University and Director of the Weight Control & Diabetes Research Center at The Miriam Hospital.

36.     At all times relevant to the matters set forth in the complaint, Dr. Wing was identified on Brown's website as both a researcher and as part of leadership for Brown' Hassenfeld Child Health Innovation Institute.

Case Number: PC-2022-00335
Filed in Providence/Bristol County Superior Court
Submitted: 1/18/2023 9:15 AM
Envelope: 3945578
Reviewer: Maureen D.

Case 1:23-CV-00081-JJM-LDA   Document 1-1   Filed 02/24/23   Page 6 of 22 PageID #: 11

37.     In multiple press releases from Brown and Lifespan from at least 2008 to the present, Brown and Lifespan repeatedly identified and touted Dr. Wing as a weight loss expert from both Brown University and The Miriam Hospital.

38.     In or about May 2018, Brown awarded Dr. Wing with a faculty award. Upon information and belief, Jill Pipher, vice president for research at Brown, presented the award with Brown Provost Richard M. Locke during an April 19, 2018, Celebration of Research ceremony at Brown's Faculty Club.

39.     At all times relevant to the matters in the complaint, Dr. Wing and Dr. Bond were identified on Brown's website as "researchers@Brown."

40.     In or about February 2020, Dr. Bond appeared on a segment of GoLocalLive and was identified as a Brown researcher, with Brown's logo displayed prominently behind him throughout the recorded session.

41.     In the Attorney General's recent rejection of the Care New England and Lifespan merger, the opinion noted that Brown's role was a "key example of the dichotomy" between Lifespan and Brown's external and internal messaging about their status and interrelationship.

42.     In that same report, the AG noted that Lifespan's marketing point for a merger with CNE, that permitting the merger would create an integrated academic health system, was at odds with Lifespan's own website that states that Lifespan, in the current, un-merged state is already a "comprehensive, integrated health system with the Warren Alpert Medical School of Brown University."

43.     As reported by a local publication, Providence Business News, in April of 2022, Brown, Lifespan and Care New England sought proposed an integrated academic health system under its merger application, but the AG rejected it and noted that Lifespan already

refers to itself as such with  Brown on its website.  In that same article, Brown's President was quoted as stating, "Brown's partnership with Lifespan is particularly strong."

44.     As of the date of this Amended Complaint,  and at all times pertinent to the matters set forth in the complaint, Miriam's website has both the Lifespan and Brown logos prominently displayed on its homepage.

45.     Upon information and belief, Rena Wing's pay rate is determined by Brown University.

46.     Rena Wings was paid by Lifespan and the Miriam Hospital.

47.     Rena Wing's job duties and responsibility were, at least in part, set and defined by Brown University.

48.     Brown University had the ability to promote, demote, terminate and discipline Rena Wing.

49.     Rena Wing, as a member of the faculty at Brown University, was subject to the Brown University Code of Conduct by which he was subject to disciplinary action, up to and including suspension without pay, or termination of employment or association with the University.

50.     If Rena Wing's employment or association with Brown University was terminated, her employment with Lifespan Corporation and The Miriam Hospital would have been terminated.

51.     Rena Wing's advancement and promotion was set and established and granted by Brown University.

Case Number: PC-2022-00335
Filed in Providence/Bristol County Superior Court
Submitted: 1/18/2023 9:15 AM
Envelope: 3945578
Reviewer: Maureen D.

Case 1:23-CV-00081-JJM-LDA   Document 1-1   Filed 02/24/23   Page 8 of 22 PageID #: 13

52.     The department run by Rena Wing at Lifespan Corporation and The Miriam Hospital is staffed with Brown researchers..

53.     Plaintiff, when attempting to remedy the hostile environment, the reduction in pay and the termination of his position of employment was referred by an employee at Lifespan to Dr. Steven Rasmussen, Chair of Brown's Department of Psychiatry and Human Behavior, to address the behavior and actions of Rena Wing

54.     While employed by Defendants, Plaintiff was required to seek grants to assist in the funding of his department.

55.     In or about the end of 2018 and/or beginning of 2019, following major surgery to repair a torn biceps muscle, Plaintiff returned to work several weeks earlier than medically instructed to work on grant applications.

56.     In or about February 2019, upon Plaintiff's return to the workplace, Defendant Wing instructed Plaintiff to pursue other funding sources and informed him that he might need to "prostitute" himself to other departments to obtain the additional funding she required.

57.     The Plaintiff found this instruction, to "prostitute himself" offensive and humiliating.

58.     When Plaintiff's funding levels were at their highest, he complied with Defendant Wing's request to "help" cover the salaries of other employees, even when those employees were no longer working on Plaintiff's grants.

59.     Upon information and belief, Defendant Wing did not request any similarly situated females to cover the salaries of other employees.

8

Case Number: PC-2022-00335
Filed in Providence/Bristol County Superior Court
Submitted: 1/18/2023 9:15 AM
Envelope: 3945578
Reviewer: Maureen D.

Case 1:23-cv-00081-JJM-LDA   Document 1-1   Filed 02/24/23   Page 9 of 22 PageID #: 14

60.     Upon information and belief, Defendant Wing assisted younger female employees in securing funding, including writing substantial portions of grants they submitted and assisting in securing additional funding through alternative sources.

61.     Defendant Wing asked another researcher, Dr. Thomas, to put a junior female colleague on a grant instead of Plaintiff.

62.     In or about February 2019, Plaintiff sought to engage Defendant Wing in an attempt to secure alternate funding, which Defendant Wing failed and/or refused to do.

63.     In or about May 2019, Plaintiff was notified of his promotion to the rank of full professor by unanimous approval, with the appointment commencing in July 2019 and running through June 30, 2024.

64.     Upon information and belief, a promotion to the rank of full professor customarily carries with it an increase in pay.

65.     In or about May 2019, Plaintiff informed Defendant Wing of his promotion, which she demeaned by stating "I already know" and "I can't pay you."

66.     Plaintiff did not receive an increase in pay commensurate with his position as a professor.

67.     In or about October 2019, Defendant Wing threatened Plaintiff's grant writing activities.

68.     In or about October 2019, Wing told Plaintiff that he was of "no value," which Plaintiff found offensive and humiliating.

Case Number: PC-2022-00335
Filed in Providence/Bristol County Superior Court
Submitted: 1/18/2023 9:15 AM
Envelope: 3945578
Reviewer: Maureen D.

Case 1:23-cv-00081-JJM-LDA   Document 1-1   Filed 02/24/23   Page 10 of 22 PageID #: 15

69.     In or about October 2019, Defendant Wing continued to subject Plaintiff to disparate treatment and negatively impacted his employment when she refused to assist Plaintiff in his efforts to comply with her directive and seek assistance from other departments to address her restrictions on his salary.

70.     Defendant Wing also interfered with and/or refused to allow Plaintiff's engagement with other departments to maintain his employment and benefits of employment, including salary.

71.     In or about October 2019, Wing criticized Plaintiff for not engaging with a younger and more junior female member of the faculty for coordinated grant projects, without offering any basis for the criticism, other than she did not like it.

72.     In or about November 2019, Defendant Wing notified Plaintiff that his annual merit pay increase would be 1%.

73.     Upon information and belief, a 3% merit increase is customary.

74.     Upon information and belief, younger and less experienced and/or similarly situated female employees under Defendant Wing's supervision all received 3% merit pay increases.

75.     Defendant Wing routinely diminished Plaintiff's accomplishments in his recognized specialty area of research in front of his colleagues and actively discouraged him from continuing to pursue this research, despite it being recognized nationally and internationally by multiple professional organizations. Defendant Wing did not criticize nor demean similarly situated female colleagues in front of others in the way she did with Plaintiff.

Case Number: PC-2022-00335
Filed in Providence/Bristol County Superior Court
Submitted: 1/18/2023 9:15 AM
Envelope: 3945578
Reviewer: Maureen D.

3-cv-00081-JJM-LDA    Document 1-1    Filed 02/24/23    Page 11 of 22 PageID #: 16

76.     On or about February 6, 2020, Defendant Wing informed Plaintiff that his full salary would only be paid through January 31, 2021, after which she would only cover 50% of Plaintiff's salary from February 1, 2021 through January 31, 2022.

77.     Defendant Wing unilaterally reduced Plaintiff's salary by 50% effective January 31, 2021.

78.     On or about February 6, 2020, Defendant Wing informed Plaintiff that there were no further opportunities for him with the Defendants and that he should seek employment with other institutions.

79.     On or about February 7, 2020, Defendant Wing emailed Plaintiff asking him to sign a letter acknowledging the unilateral change in salary, intimating the signature was a prerequisite for Plaintiff to work on a new grant with her.

80.     Plaintiff believed the offer to work on a new grant was contingent on his signing the letter Defendant Wing emailed and responded, via email, that he needed time to consider and learn more about the ramifications of the revised terms of employment that she was unilaterally foisting upon him.

81.     On or about February 8, 2020, Defendant Wing, without permission, walked into Plaintiff's office, put the letter on Plaintiff's desk, pointed at it and angrily demanded that Plaintiff sign it.

82.     The Plaintiff restated his hesitancy and confusion since he was only in the first year of a five-year Brown faculty appointment, to which Defendant Wing responded that the appointment was "just a piece of paper."

83.     Defendant Wing consistently informed Plaintiff that his ability to cover his salary was substandard, but did not provide guidance as to what was needed or required from

Plaintiff, refused any and all of Plaintiff's request for assistance and undermined Plaintiff's efforts to collaborate with other departments or otherwise satisfy her.

84.     Upon information and belief, other faculty members, specifically younger female faculty, at this time were not fully funded, were not submitting the same volume of grant applications as Plaintiff, were not publishing at anywhere near the same rate as Plaintiff, nor had they achieved an international reputation in their area of research. Upon information and belief, Defendant Wing did not unilaterally reduce the salary of those younger female faculty members, require them to seek other funding and/or fail to assist them in finding or providing funding for their salaries.

85.     Other faculty members, specifically younger female faculty, were not subjected to the same hostile work environment, humiliation, reduction in financial and career opportunities, adverse employment actions or threats to their employment as suffered by Plaintiff.

86.     Plaintiff sought the assistance of Dr. Steven Rasmussen, Chair of Brown's Department of Psychiatry and Human Behavior, regarding Dr. Wing's increasingly hostile actions and the increasingly hostile work environment, adverse employment actions and Plaintiff's resulting distress.

87.     On or about February 27, 2020, Plaintiff met with Dr. Rasmussen and informed him of his complaints of discrimination and hostile work environment.

88.     On or about February 27, 2020, Dr. Rasmussen informed Plaintiff that there was not much he could do because Defendant Wing operates "on her own" and that he, even though chair of the Department of Psychiatry and Human Behavior at Brown University and Defendant Wing's supervisor, could not assist Plaintiff because she "gets a lot of grants."

Case Number: PC-2022-00335
Filed in Providence/Bristol County Superior Court
Submitted: 1/18/2023 9:15 AM
Envelope: 3945578
Reviewer: Maureen D.

Case 1:23-cv-00081-JJM-LDA   Document 1-1   Filed 02/24/23   Page 13 of 22 PageID #: 18

89.     On or about February 27, 2020, Steve Rasmussen stated to Plaintiff that Defendant Wing can do what she wants with "her" center.

90.     In or about July 2020, with no change to the continuing hostile environment and absence of a clear path for redress, Plaintiff again reached out to Dr. Rasmussen for assistance and was informed to look outside of Lifespan and Brown.

91.     Defendants were aware of Plaintiff's complaints and failed to investigate and failed to remedy the allegations and situation.

92.     In or about November 2020, Plaintiff sought alternate funding through another department/division of the Defendant entities to maintain and increase his funding and to maintain his employment.

93.     Plaintiff's contact with another department/division of the Defendant entities was met with interest and potential.

94.     On or about January 4, 2021, Plaintiff was notified by Defendant Wing by emailed letter that his employment would be terminated as of December 31, 2021.

95.     On or about January 4, 2021, Plaintiff was notified by Defendant Wing via emailed letter that his salary would be reduced by 50% in February 2021.

96.     Despite the initial interest from the other department, set forth in Paragraphs 91 and 92 above, the head of that department failed to respond to Plaintiff's subsequent contacts.

97.     In or about January of 2021, Plaintiff met with Michael Henderson, Vice President of Lifespan's Office of Research Administration, and inquired if there was any policy that permitted Defendant Wing to restrict Plaintiff's grant submissions. Mr. Henderson responded he was unaware of any such policy.

Case Number: PC-2022-00335
Filed in Providence/Bristol County Superior Court
Submitted: 1/18/2023 9:15 AM
Envelope: 3945578
Reviewer: Maureen D.

Case 1:23-cv-00081-JJM-LDA   Document 1-1   Filed 02/24/23   Page 14 of 22 PageID #: 19

98.     During the January 2021 meeting with Mr. Henderson, Plaintiff expressed that he felt Defendant Wing was interfering with his career opportunities and treating him differently than less experienced and/or similarly situated female colleagues. Mr. Henderson responded that Lifespan human resources would not get involved and Defendant Wing had "full authority."

99.     Plaintiff expressed a desire to remain within Defendants' system. Mr. Henderson offered to help "make it happen."

98.     In or about March 2021, Plaintiff learned that Defendant Wing had commenced communication with the head of the department referenced in Paragraphs 91, 92 and 95 above.

100.    In or about March 2021, Plaintiff learned that a stipend that he had secured and for which he had been approved, was transferred to Defendant Wing's department. Defendant Wing informed Plaintiff that not only was he not allowed to use the stipend as an alternate means of funding the remaining 50% of his salary, but that she would be using the stipend to reduce her contribution to his reduced salary.

101.    Upon information and belief, Defendant Wing's actions were in retaliation for Plaintiff's raising complaints about her treatment of him.

102.    Plaintiff's efforts to address Defendant Wing's ongoing discrimination, hostile work environment and retaliation with all appropriate supervisory channels went unanswered.

103.    In or about June 2021, Mr. Henderson informed Plaintiff that Plaintiff's effort to seek funding and employment with another Lifespan/Brown department would not take place due to Defendant Wing's interactions with the head of the other department.

104.    Upon information and belief, Defendant Wing had eliminated and interfered with Plaintiff's other options within Lifespan and Brown.

105.   In or about June 2021, Mr. Henderson opined that Defendant Wing's actions are without recourse due to her "cache" and her husband being a former dean and because she "commands a certain level of fear and that people would rather not be on the other side of that."

106.   Other employees of Lifespan Corporation, The Miriam Hospital and faculty of Brown University, who were younger and/or female and under the supervision of Defendant Wing, were not subjected to the hostile work environment and restrictions as to terms and benefits of employment and funding suffered by Plaintiff.

107.   The actions of the Defendants, by and through Defendant Wing, were discriminatory, retaliatory and created a hostile work environment.

108.   As a result of the above actions of the Defendants, Plaintiff suffered adverse employment actions including the lack of a salary increase commiserate with his experience and position, reduction of salary, interference with business and funding relationships, retaliation for raising complaints about his treatment and was ultimately forced to resign and find alternate employment outside the State of Rhode Island.

109.   As a result of the above actions of the Defendants, Plaintiff suffered lost wages, emotional distress and has been further damnified.

110.   The Defendants exerted direct, daily control over the manner in which Dr. Wing and Plaintiff performed their jobs.

111.   The Defendants were involved with setting and paying Dr. Wing and Plaintiff's salaries, and setting forth conditions for promotions and conduct.

112.   At all relevant times, the Parties acted and understood that Dr. Wing and Plaintiff were employees of both Brown and Lifespan.

Case Number: PC-2022-00335
Filed in Providence/Bristol County Superior Court
Submitted: 1/18/2023 9:15 AM
Envelope: 3945578
Reviewer: Maureen D.

Case 1:23-cv-00081-JJM-LDA   Document 1-1   Filed 02/24/23   Page 16 of 22 PageID #: 21

113.   Defendants were joint employers of Dr. Wing and Plaintiff.

114.   The actions of the Defendants constitute a violation of the Rhode Island Civil Rights Act, R.I.G.L. §42-112-1, et seq, the Rhode Island Fair Employment Practices Act, R.I.G.L. §28-5-1, et seq., and 28 U.S.C. §2000(e) and §2000(e)-3, also known as Title VII of the Civil Rights Act of 1964.

## COUNT I
*Discrimination – RIGL 42-112-1 et seq, (Rhode Island Civil Rights Act)*

115.   Plaintiff restates all previous paragraphs by reference as if stated fully herein.

116.   The defendants did violate R.I.G.L. §42-112-1, the Rhode Island Civil Rights Act "RICRA", by the facts described herein, by discriminating against him with respect to hire, tenure, compensation, terms, conditions or privileges of employment because of his gender.

117.   As a result, he has suffered and continues to suffer damages.

WHEREFORE, Plaintiff prays this Honorable Court award him compensatory, consequential and exemplary damages as well as the costs of litigation and reasonable attorneys' fees pursuant to Rhode Island General Laws § 42-112-2 and such other relief as the Court deems appropriate.

## COUNT II
*Retaliation – RIGL 42-112-1 et seq, (Rhode Island Civil Rights Act)*

118.   Plaintiff restates all previous paragraphs by reference as if stated fully herein.

119.   The defendants did violate R.I.G.L. §42-112-1, the Rhode Island Civil Rights Act "RICRA", by the facts described herein, by discriminating against him because he opposed

16

a practice forbidden by RICRA and engaged in protected activity in the form of complaints of discrimination.

120.   As a result, he has suffered and continues to suffer damages.

WHEREFORE, Plaintiff prays this Honorable Court award him compensatory, consequential and exemplary damages as well as the costs of litigation and reasonable attorneys' fees pursuant to Rhode Island General Laws § 42-112-2 and such other relief as the Court deems appropriate.

## COUNT III
*Hostile work environment - RIGL 42-112-1 et seq, (Rhode Island Civil Rights Act)*

121.   Plaintiff was subjected to unwanted harassment, based upon gender, that was objectively and subjectively offensive and sufficiently severe and pervasive so as to alter the conditions of Plaintiff's employment and created an abusive and hostile work environment.

122.   Defendants were aware of the hostile work environment and despite Plaintiff's requests for help, failed to take any action.

123.   As a result, Plaintiff suffered, and continues to suffer, damages.

WHEREFORE, Plaintiff prays this Honorable Court award him compensatory, consequential and exemplary damages as well as the costs of litigation and reasonable attorneys' fees pursuant to Rhode Island General Laws § 42-112-2 and such other relief as the Court deems appropriate.

## COUNT IV
### *Discrimination - R.I.G.L. § 28-5-1 et seq.*

124.   Plaintiff restates all previous paragraphs by reference as if stated fully herein.

125.   The defendant corporations did violate R.I.G.L. §28-5-1, the Rhode Island Fair Employment Practices Act  "FEPA", by the facts described herein, by discriminating against him with respect to hire, tenure, compensation, terms, conditions or privileges of employment because of his gender.

126.   As a result, he has suffered and continues to suffer damages.

WHEREFORE, plaintiff prays this Honorable Court award him compensatory and consequential damages pursuant to Rhode Island General Laws 28-5-24(b) including but not limited to lost income and punitive damages pursuant to Rhode Island General Laws 28-5-29.1 as well as his costs of litigation and reasonable attorneys' fees pursuant to Rhode Island General Laws § 28-5-24(a) and such other relief as the Court deems appropriate.

## COUNT V
### *Retaliation - R.I.G.L. § 28-5-1 et seq.*

127.   Plaintiff restates all previous paragraphs by reference as if stated fully herein.

128.   The defendant corporations did violate R.I. Gen. Laws §28-5-6(5), the Rhode Island Fair Employment Practices Act, by the facts described herein, by discriminating against him because he opposed a practice forbidden by FEPA and engaged in protected activity in the form of complaints of discrimination.

129.   As a result, he has suffered and continues to suffer damages.

WHEREFORE, plaintiff prays this Honorable Court award her compensatory and consequential damages pursuant to Rhode Island General Laws 28-5-24(b) including but

Case Number: PC-2022-00335
Filed in Providence/Bristol County Superior Court
Submitted: 1/18/2023 9:15 AM
Envelope: 3945578
Reviewer: Maureen D.

3-CV-00081-JJM-LDA    Document 1-1    Filed 02/24/23    Page 19 of 22 PageID #: 24

not limited to lost income and punitive damages pursuant to Rhode Island General Laws 28-5-29.1 as well as her costs of litigation and reasonable attorneys' fees pursuant to Rhode Island General Laws § 28-5-24(a) and such other relief as the Court deems appropriate.

## COUNT VI

*Hostile work environment - RIGL 28-5-1 et seq.*

130.    Plaintiff restates all previous paragraphs by reference as if stated fully herein.

131.    Plaintiff was subjected to unwanted harassment, based upon gender, that was objectively and subjectively offensive and sufficiently severe and pervasive so as to alter the conditions of Plaintiff's employment and created an abusive and hostile work environment.

132.    The defendant corporations were aware of the hostile work environment and despite Plaintiff's requests for help, failed to take any action.

133.    As a result, Plaintiff suffered, and continues to suffer, damages.

WHEREFORE, plaintiff prays this Honorable Court award her compensatory and consequential damages pursuant to Rhode Island General Laws 28-5-24(b) including but not limited to lost income and punitive damages pursuant to Rhode Island General Laws 28-5-29.1 as well as her costs of litigation and reasonable attorneys' fees pursuant to Rhode Island General Laws § 28-5-24(a) and such other relief as the Court deems appropriate.

## COUNT VII

*Discrimination – 42 U.S.C. §2000e (Title VII of the Civil Rights Act of 1964)*

134.    Plaintiff restates all previous paragraphs by reference as if stated fully herein.

Case Number: PC-2022-00335
Filed in Providence/Bristol County Superior Court
Submitted: 1/18/2023 9:15 AM
Envelope: 3945578
Reviewer: Maureen D.

Case 1:23-cv-00081-JJM-LDA   Document 1-1   Filed 02/24/23   Page 20 of 22 PageID #: 25

135.  The defendant corporations did violate Title VII by the facts described herein, by discriminating against him with respect to hire, tenure, compensation, terms, conditions or privileges of employment because of his gender.

136.  As a result, he has suffered and continues to suffer damages.

WHEREFORE, plaintiff respectfully requests this Honorable Court award him compensatory damages and all other damages authorized by statute, as well as him costs of litigation and reasonable attorneys' fees pursuant to statute.

## COUNT VIII

*Retaliation – 42 U.S.C. §2000e (Title VII of the Civil Rights Act of 1964)*

137.  Plaintiff restates all previous paragraphs by reference as if stated fully herein.

138.  The defendant corporations did violate Title VII by the facts described herein, by retaliating against him because he opposed a practice forbidden by 42 U.S.C. §2000(e) and engaged in protected activity in the form of complaints of discrimination.

139.  As a result, he has suffered and continues to suffer damages.

WHEREFORE, plaintiff respectfully requests this Honorable Court award him compensatory damages and all other damages authorized by statute, as well as his costs of litigation and reasonable attorneys' fees pursuant to statute.

## COUNT IX

*Hostile work environment - 42 U.S.C. §2000e (Title VII of the Civil Rights Act of 1964)*

140.  Plaintiff restates all previous paragraphs by reference as if stated fully herein.

141.  Plaintiff was subjected to unwanted harassment, based upon gender, that was

objectively and subjectively offensive and sufficiently severe and pervasive so as to alter the conditions of Plaintiff's employment and created an abusive and hostile work environment.

142.    The defendant corporations were aware of the hostile work environment and despite Plaintiff's requests for help, failed to take any action.

143.    As a result, Plaintiff suffered, and continues to suffer, damages.

WHEREFORE, plaintiff respectfully requests this Honorable Court award him compensatory damages and all other damages authorized by statute, as well as his costs of litigation and reasonable attorneys' fees pursuant to statute.

## PLAINTIFF DEMANDS A JURY TRIAL

Respectfully submitted,
DALE BOND
By and through his attorneys,

/s/ Christine L. Marinello
Christine L. Marinello, RI #6191
650 Ten Rod Road
North Kingstown, RI 02852
(401) 757-3968
Fax: 1 (888) 851-0578
cm@cmlawri.com

/s/ David S. Cass
David S. Cass, RI #5044
One Davol Square, 4ᵗʰ Floor
Providence, RI 02903
(508) 889-2674
Fax: (401) 272-2708
david@davidcasslaw.com

Case Number: PC-2022-00335
Filed in Providence/Bristol County Superior Court
Submitted: 1/18/2023 9:15 AM
Envelope: 3945578
Reviewer: Maureen D.

## CERTIFICATE OF SERVICE

I hereby certify that, on the _____ day of January 2022, I electronically served this document with notice to the following parties:

Mitchell R. Edwards (# 6942)
Rita E. Nerney (# 9713)
Hinckley, Allen & Snyder LLP
100 Westminster Street, Suite 1500
Providence, RI 02903
medwards@hinckleyallen.com
rnerney@hinckleyallen.com

Jillian S. Folger-Hartwell (#6970)
Julia R. Shackleton (#10015)
LITTLER MENDELSON, P.C.
One Financial Plaza, Suite 2205
Providence, RI 02903
jfolgerhartwell@littler.com
jshackleton@littler.com

The document is available for viewing and/or downloading from the Rhode Island Judiciary's Electronic Filing System.

/s/David S. Cass